Madam Clerk, please call the next case. 111-3007 and 11-3008. Antonio Leblanc v. J.K.C. Trucking Co. Justices, Counsel, may it please the Court. My name is Lloyd Sonenthal. I represent J.K.C. Trucking in this consolidated appeal. Our appeal was docketed under 111-3007 W.C. J.K.C. Trucking, Inc. is the putative employer of Antonio Labuz, the petitioner. Mr. Labuz filed his own appeal under docket number 111-3008 and they were consolidated by order of this Court. J.K.C. contends that Mr. Labuz was an independent contractor on March 23, 2009. On that date, he was hauling loads on a contractual basis for a negotiated fee for J.K.C. on behalf of certain consignees and consignors. While examining the trailer attached to a tractor owned by J.K.C. and lent to Mr. Labuz to pull the trailer, an examination required by DOT regulations, Mr. Labuz slipped and fell to the ground from the bed of the trailer and was injured. He filed his application for adjustment on April 9, 2009. On May 12, 2009, he filed his petition under 19B, seeking, among other things, temporary benefits and medical expenses. Arbitrator Milton Black held an evidentiary hearing on July 23 and July 24 of 2009 and issued his written opinion on September 3 of 2009. Both Mr. Labuz and J.K.C. filed separate petitions for review to the full commission. The commission affirmed the arbitrator's decision on March 15, 2010. And then thereafter, both J.K.C. and Mr. Labuz filed for review of the commission's decision by the Circuit Court of Cook County. J.K.C. sought a reversal of the commission's affirmation of the arbitrator's determination that Mr. Labuz was an employee of J.K.C. on March 23, 2009, the day of the accident, that he was not an independent contractor as we contend. Mr. Labuz sought reversal of the commission's affirmation of the arbitrator's determination regarding the average weekly wage and the arbitrator's refusal to impose penalties or attorney's fees. On motion of Mr. Labuz, the individual appeals were consolidated by the Circuit Court and continued under the earlier filed action, which was the action filed by Mr. Labuz. Thereafter, J.K.C. moved to dismiss Mr. Labuz's appeal to the Circuit Court of Cook County for the reason that Mr. Labuz failed to comply with the statutory scheme by which the Circuit Court requires subject matter jurisdiction and in personam jurisdiction over the commission. Mr. Labuz did not direct the clerk of the Circuit Court of Cook County to serve a member of the commission, the secretary of the commission, or the assistant secretary of the commission with summons within the 20-day period following receipt of the commission's decision. So why can't he serve the commission as an entity? You cited the proper way it could be done, but does it make any sense that you can't serve the commission as a body? Does it say this is the only way that the jurisdiction can be guarded if you serve an individual member? Yes. Is that what it says? It says you must serve a member of the commission, the secretary, or the assistant secretary. It doesn't say you can send a summons to anyone or no one just sending it to the commission. The second part of the sentence that Mr. Labuz relies upon is the manner and method of service. Serve them by mail at the office in Chicago as opposed to serving them personally or serving them at their offices. But it's clear, and we respectively argue, Your Honor, that it's clear that it says you must serve a member of this specified class. Either a member of the commission or the secretary or the assistant secretary must name one of those people. Why not just serve the commission? Service of the commission. It says in the statute service of the commission is effectuated by serving either a member of the commission. That's not what it says. Yes, sir. I'm sorry. We'll read what it says. Okay. Service upon any member of the commission or the secretary or the assistant secretary thereof shall be service upon the commission. Yes, sir. So if you serve any one of them, you've served the commission. Exactly. But it doesn't say it's the only way to serve the commission, does it? And it doesn't say the commission must be served by serving these people. It goes on later to say, and that's what he does, when he talks about the clerk issuing the summons, shall be mail a copy of the summons to the office of the commission and a copy of the summons to all other parties of record. Right. It specifically says it can do that. I understand, Your Honor, but I think respectfully that Mr. Labuse is reading into that statute that there is an alternative. If it tells you what to do, how can you then infer that you could do something other than that? No. It tells you what you can do. Well, it says shall, I think, Your Honor. It says shall be service on the commission. It doesn't say shall serve the secretary or the assistant secretary. If it says in order to serve the commission, they shall serve the secretary or assistant secretary, your argument might have some weight. But that's not what it says. But my argument is also then why does the legislature provide this alternative? What would be the point? Why have two different ways of serving or effectuating service on the commission in order to obtain in personam jurisdiction on the commission and so as to be able to, as a circuit court, enter orders determining whether or not the commission should be reversed? Well, because you get a situation here where the members of the commission are defendants in their own right, in addition to being officers of the commission. The secretary or the assistant secretary are not defendants in their own right, but you can serve them. If you want to serve the commission by serving them, you can do it. Well, I think It shall be service upon the commission. It doesn't say that's the way you have to serve the commission. It just doesn't say what you want it to say. I respectfully disagree. Why don't we move on to the independent contract? Yes, sir. The second question JKC presents on appeal to this court is whether the circuit court erred by affirming the commission finding that Mr. LaBuz on a day-to-day accident was an employee of JKC. The arbitrator found, page 812 of the appendix, that JKC, not Mr. LaBuz, had the right to control the manner in which the work was performed and that JKC never stopped exerting control over Mr. LaBuz. Mr. LaBuz, in his case in chief in the commission, advanced Roberson, a 2007 Supreme Court case, as being dispositive on the issue of employee versus independent contractor. In Roberson, the arbitrator denied the claimant's claim, finding no relationship, employer-employee. The commission reversed. The circuit court reversed the commission. The appellate court reversed. The circuit court concluding the commission's decision was not against manifest weight, but opining the case was close. The Supreme Court affirmed. The appellate court, on the same basis, also commenting that it was a close case. The commission's decision affirming the, relied on where, a 2000 First District appellate case, in where, unlike Roberson, the arbitrator found for claimant, and then unlike Roberson, the commission reversed, and then the circuit court confirmed, and the appellate court reversed the circuit court. Where cited Bauer versus Industrial Commission, which we argue is a key case, a 1972 Supreme Court case. For the proposition that the single most important factor in whether the purported employer has a right to control the actions is control. In Wentholt, the case involving the ban playing at the Chicago Beer Gardens, which we cited extensively, the court also relied on Bauer, again citing the holding that the right to control the work is the single most important factor. You're not disputing that factor, are you? I'm not. As I pointed out in my brief, Your Honor, nowhere, then, is control defined. Control is, at most, discerned, but respectfully, we suggest that the definition is a moving target. Bauer was a pizza delivery man at Father and Son's Pizzeria, apparently a very busy store. They had 60 regular drivers. They had 40 fill-in drivers because they didn't know if people were going to show up or not show up. In that case, the Supreme Court held Bauer was an independent contractor. Robertson, Ware, even area transportation, where Mr. Fiedler was a truck driver, a 1984 First District case, which we also cited, are all notable for the listing of all these various attributes to consider to discern control, to determine whether the purported employer maintains control. Let's hone in on these factors, because I think this is what your opponent may challenge you with anyway. You've got the requirement that the claimant start each of his trips at J.K.C.'s facilities, correct? True. He drives J.K.C. trucks, not his own truck, correct? He did, yes, sir. He's required to obtain J.K.C. authorization for any truck repairs, correct? Yes. Does that suggest control? Judge, the argument that we're making is that as a practical matter, we could list all the elements in Robertson, we could list all the elements in Ware or area transportation, or all the elements related to how Mr. LeBou should conduct himself. But again, as a practical matter, when the taillights go out the gate onto Center Street, all bets are off. We don't really have any control over our employee drivers or over these independent contractor drivers, except to the extent that they're there on the day that they're supposed to pick up the truck and take the load. That's when we have our control. And we're arguing that if Mr. LeBou retains control over whether he works or does not work, whether he shows up or does not show up, whether he lays off and goes to Europe for several months, that we don't really have any control over him. He is not an employee. He's a dilettante. He really is an independent contractor. He's not somebody that we have control over. The fact that we have all these various attributes in our case, or Robertson or Ware, we respectively suggest, is relevant to that 800-pound gorilla in the room. The fact that Ware, that PINI and Superior, in Mr. Ware's instance, had no employees. They got rid of all their employees. They changed their business plan. And though that issue was not ever addressed specifically, I think you can gather together all you need to come up with a certain result, or you can come up with another result in good faith. The fact of the matter is, I think if you look at those cases, the motives of those employers in getting rid of basically the workers' compensation law in their company is suspect. And, again, in our case, we had 240 employees all covered by COMP, 240 employees all covered by health insurance. Mr. Labuse could have been one of those employees, but from day one did not want to be. And from day one stipulated that he'd be able to work when he wanted to work and not work when he didn't want to work. That's our position. And so for that reason, we would ask the court to reverse the finding of the circuit court affirming the commission. We would also respectfully ask the court to reverse the circuit court affirming the, pardon me, reverse the circuit court position that our motion to dismiss for lack of subject matter jurisdiction, let me rephrase it. Our motion for dismissing based on lack of subject matter jurisdiction was denied. We're asking that that be determined to be error and that it be reversed and that the appeal of Mr. Labuse be dismissed for not having had subject matter jurisdiction in circuit court. Any other questions, sir? I don't believe there are. Thank you, counsel. Good morning. My name is Joe Hetherington. I represent Mr. Labuse. May it please the court, counsel. Actually, before I begin, may I ask, should I not only respond to counsel's argument on his appeal, but argue my own appeal at this point? Or are we going to have a rebuttal from him on his appeal and then call mine? It's always been a concern. How would you prefer to do it? If you can clearly mark out yours, he does get a rebuttal. I think I'd prefer to respond to his and let him then reply and then go into my appeal. Fair enough. And then he gets to reply to your appeal, and you get a rebuttal, so we're going to hear two separate arguments. Well, it's up to you. Why don't you just argue yours along with this? He gets to reply. Okay. That's fine. Mark. Yeah. Okay. Okay. I only want to spend a minute or two on the first portion of the defendant's appeal, which is the argument that the plaintiff did not properly serve the workers' comp commission with notice of his circuit court review. I think it's a frivolous argument. Why do you think it's frivolous? Doesn't the statute say member secretary or assistant secretary? It does say that, but I think — Wasn't there a reason for that? Like if you were going to sue a corporation, you wouldn't just serve the corporation. You would probably serve a registered agent or an officer. Well, I actually don't understand why the section 19F1 is written the way it's written, but I completely agree with Justice Hoffman's reading of section 19F1. Which is what? Which is that what it allows for is two alternative methods of service. What counsel is arguing is a selective, and I think — Okay. Under that argument, so when you serve the commission, where does it go? Just put commission on it and that's it? Well — That suffices? Well, Judge — That's sufficient notice? Your Honor, for all the 35 years that I've been practicing workers' comp law, the form that's been used for serving the commission notice of a circuit court review is this form that's part of the record that says certificate of mailing, and it's addressed by the circuit court to the Illinois Workers' Compensation Commission at 100 West Randolph Street. It's not addressed to any member of the commission or to the commission's secretary or assistant secretary. And is that a form that's adopted by the commission through their rules, or where does the form come from? I don't know where it comes from, but the fact is that it's always been in use for the last 35 years. Where do you pick up the form? How about where you acquire the form? You pick it up at the Workers' Comp Commission, at the circuit court, or you download it from their website now. Okay. Okay. It's not a form that we litigants create. It's the circuit court's form. So certainly it's contemplated by the circuit court that the way you serve the commission notice of a circuit court review of a commission decision is by sending notice to the office of the commission, which is what Section 19F1 says. It says, as Justice Huffman noted, it does say that service on an individual member or on the secretary or assistant secretary shall be service on the commission. So that's superfluous, then. It really doesn't make any difference. I wouldn't say it's superfluous. Just read it out of them. But I would say that it clearly provides two alternative methods of service. One is if you choose, you can serve an individual member or the secretary or assistant secretary. Or, and the statute 19F1 says this twice, not once but twice, that service on the commission shall be made by mailing notice to the office of the commission. It's right there in 19F1. So, again, I'm not sure why two alternative methods are provided for. But certainly the second method, the method we use and the method that the circuit court relies on, is a proper method. Counsel, can you tell us on the second issue succinctly, before you get into your argument and the other issues, why your client is an employee and not an independent contractor? To summarize your question. Your Honor, as you know, as you all know, there are a number of factors to be considered in determining whether a particular worker is an employee or an independent contractor. The most important of those factors is control of the worker's work. Generally, if the alleged employer controls the worker's work, the worker is an employee rather than an independent contractor. In this case, there is clear and essentially uncontroverted evidence that the defendant trucking company closely controlled the work of the plaintiff. The plaintiff was required by the defendant to inspect his truck, the tractor and trailer that the defendant provided to him at the beginning of each trip using a form provided by the defendant. The plaintiff was required by the defendant to use routes to get to his destinations that were chosen by the defendant. He couldn't go wherever he wanted to go. He was required by the defendant to buy gas at gas stations chosen by the defendant. He was required by the defendant to keep a log of his movements using a log book provided by the defendant. And he was required to call in every morning before 11 o'clock to report his location to the defendant. So there was close control. The arbitrator found that there was control and that the respondent never ceased to exercise that control. So I would say that based on that control alone, there's ample support in the record for the finding by the commission that... Sure, some of those things are required by DOT regulations, but some of them were not. But the fact is that you have to look at the whole picture and there are two other elements, two other factors that strongly support the finding that the plaintiff was an employee. One is who owned the equipment. Generally, a true independent contractor owns his own equipment. The plaintiff here was not an owner-operator. The tractor and trailer that he drove were provided by the defendant. Second, the plaintiff's work was an integral part of the defendant's business. The defendant is in the freight hauling business. The plaintiff was hauling freight for the defendant. A typical independent contractor is someone who's operating a business that's separate and apart from the business of the party who hires him. The plaintiff wasn't operating a business. He was employed in the respondent's business. So... What about the whippy wage and the penalties, I think? Your Honor, on the weekly wage issue, I think it's very clear that the arbitrator and the commission did not comply with Section 10 in calculating the average weekly wage. The arbitrator divided the plaintiff's total earnings for the year preceding the accident by 52 to determine the average weekly wage. This was a mistake. He should have divided by 31. Under Section 10 of the Act, when an employee loses five or more calendar days from work during the year preceding the accident, the average weekly wage of the employee must be calculated by, quote, deducting the number of weeks and parts thereof that were lost. Sorry, I didn't get the exact quote. The language says that the average weekly wage is calculated by dividing total earnings, quote, by the number of weeks and parts thereof remaining after the time so lost is deducted. In this case, the plaintiff lost far more than five calendar days during the year preceding the accident. What does that exactly mean, lost, lost time? Obviously, there can be a disagreement. The traditional way of interpreting it during my 35 years of practice is it's time not worked, period. The opposing counsel argued that your client could work when he wanted to or take off when he wanted to. In fact, he implied at least that he went to Europe for several weeks. I don't know if the record indicates whether he had to get permission to do that. But if he did it because he wanted to, is that lost time? And does that not go to the question of whether or not he was an employee? There's a suggestion in Sylvester that time lost due to some fault on the part of the employee shouldn't be considered. If you agree with that, then you could eliminate four weeks of the lost weeks. The testimony from the petitioner plaintiff was that he was an employee. Well, is the opposing counsel right when he says that your client could take off at any time that he chose to do so? Well, if that were the case, then he could control basically the calculation. That wasn't the plaintiff's testimony. He testified that he worked, and the records reflect this. He worked steadily, continuously from March of the year before the accident up until October. He left for a month to go on a trip to Poland to visit family. He came back, offered himself for employment, but the business was slow, and he wasn't called back to work until a week before the accident. So there were essentially four months during which no work was available, but he was looking for work. So the situation is identical, I believe, to the situation in cases like McCartney and Sylvester, where for reasons not under the control of the employee, work was not available throughout the year. And in those cases, what the Court found was that the employee's average weekly wage was not equal to the number of weeks that he actually worked. That's, I believe, the language in Sylvester. Your Honor, I don't think that's correct. Employees' average weekly wage must be calculated based on weeks actually worked. Well, but, and what that meant in Sylvester. I don't know what it meant. It means that you don't have to, when you say lost time, it means he didn't work. Lost time really means he didn't work for whatever reason. It doesn't mean someone took it away from him. It's all it amounts to. So when you have lost time of five or more calendar days, then you have to determine his average weekly wage based upon the number of weeks he actually worked. Yes. How many weeks did he actually work? So in this case. 31. Right. So you have to divide by 31, not 52, according to Sylvester. That's right. Okay. That's my contention. If I could go on to penalties. Summarize the argument on the penalties before you run out of time. Yes. Judge, what you heard in counsel's argument on the question of whether the plaintiff was an employer or an independent contractor was, I think, somewhat shocking. What he wants to do is have you ignore the case law that's on point. The case law that's on point is Ware and Roberson, both of which this Court decided the Supreme Court affirmed Roberson. Roberson came down in 2007. This case arose two years later. Roberson was a – I completely agree with the Court's characterization of it as a close case. This is not a close case. This case is much, much stronger than Roberson in two respects. It's like Roberson in that the plaintiff was required to sign an independent contractor agreement. But in Roberson, the plaintiff actually looked like an independent contractor. I mean, he had his own truck. And during the time he worked for the Respondent, he actually drove for other carriers in addition to driving for Respondent. Let me discuss the case. You've got Panic's testimony that he was an independent contractor. You've got your client signing the form, which is ostensibly some evidence. I mean, you do have the form to deal with that says he is an independent contractor and taxes were not withheld as it would be with an employee. So they had no argument at all to make?  I mean, you've got Panic's testimony that he was an independent contractor. And in addition, in those cases, you had guys who owned their own rigs. This guy, he's driving their truck with their name on it. Wait a minute. Just because he lost doesn't mean he gets penalized. The question is, was it unreasonable for him to withhold based upon that power? Let me respond to that. Let me respond to that. I don't know if you can take judicial notice of this, but this is a problem in the trucking industry that we see all the time. I have a case exactly like this in my office right now where benefits are being denied to a truck driver in exactly the same circumstances. After the Roberson decision, if a Supreme Court decision means anything, it should mean that litigants are required to pay attention to it and follow it. And if this case is like Roberson but stronger in that the guy wasn't driving his own truck and he didn't have as much freedom to operate his truck as the claimant in Roberson, then he's clearly, clearly an employee. And it's not no longer reasonable. All the cases that you people quote are cases where the Supreme Court has affirmed a commission decision. Now, whether a person is an employee or an independent contractor is fairly an amorphous concept. You know, it's kind of like in the eye of the beholder. You know, who has this evidence? Who has that evidence? The question of whether he is or is not an employee based upon these facts is subject to a manifest weight standard. That means there's no necessarily one right answer. If the commission had decided that the other way, is there evidence in the record that would support their decision? Sure there is. And so we'd have to give deference to that. So he lost. But that doesn't mean he's penalized. I have an opinion that penalties are supposed to serve two purposes. One is to punish an individual wrongdoer, a company that chooses not to meet its obligations under the Workers' Compensation Act and thereby harms the claimant. The second purpose is to deter other similarly situated companies from following the lead of this individual wrongdoer. And that's what's happening here. And the commission had an opportunity to serve both of those purposes by giving penalties in this case. By not doing so, the commission invited other trucking companies to do what this company is doing and did to the petitioner. And it's wrong. And so I think the Court could, can and should send a message to trucking companies that Roberson means something. That if you have a truck driver who's employed in your business and he's driving your truck with your name on it and he's going where you tell him to go, he's an employee and you shouldn't be heard to say that he's not an employee. And if you say that he's not an employee and you don't pay him benefits, you should pay penalties. There's no question about it. Thank you, Counsel. Counsel, you may respond and reply. Your Honor, it's just a short rebuttal on the question of whether or not the circuit court properly dismissed or denied my motion to dismiss based upon lack of subject matter jurisdiction. Both Justice Hoffman and I are looking at the same statute, 19F1. And I'm reading, it says, service upon any member of the commission or the circuit court secretary or the assistant secretary thereof shall be service upon the commission, dot, dot, dot, and such service shall be made upon the commission, dot, dot, dot, by mailing notices. So there's two parts. Serve one of those people and mail the notices to a specific location. It says, and such service. What's such service? The service on the commission defined by serving one of these people. And Justice Hoffman. No, you're leaving out an entire sentence. The clerk of the circuit court issuing the summons shall, on the day of issuing, mail notice of the commencement of the proceeding which shall be done by mailing a copy of the summons to the office of the commission. But that follows. It doesn't say mailing a copy to the office of the commission necessarily addressed to one of the commissioners. It doesn't say necessarily addressing the secretary. Now, they could send a sheriff out, and a sheriff could serve one of those people personally, and one would argue that under the first sentence, that's good service on the commission. Or someone can follow the other sentence and say that the clerk mails a copy to the commission, and that's how you serve the commission. So now, assuming that this is somewhat ambiguous, in deference to the act, would we interpret this to knock out everybody who files an action in Cook County because that's the way the form is printed, and that's how they serve? Your Honor, I use the same form. I didn't have any problem. And before I used that form, I went to the commission and I looked at forms coming in from other counties. The little lady on the eighth floor was nice enough, who opens the envelopes, was nice enough to let me look at other forms. And other counties don't have specific forms. The attorneys make their own forms. And they make their own forms after they read the statute, and they comply with the statute. Judge, I don't want to mislead Your Honor, but if you could say again? Yes, Your Honor. Yes, yes, yes, yes. Okay, average weekly wage. All I can say on average weekly wage is the record is clear that the arbitrator made no calculations. He said that the petitioner did not meet his burden of proof. I can't figure out what your average weekly wage is. But JKC offered a number, so that's obviously not in controversy. I'll use JKC's number. The arbitrator never made any calculations. And one of the reasons why he could not make the calculation, he said, was because the claimant testified that he would take off time sometimes. He would start different days and all that. But he would take off time sometimes when he needed to take some time off. And so the arbitrator said, based upon the evidence presented, I cannot figure out what your average weekly wage is. That was the holding. That's what was affirmed by the commission. What is an obligation to prove the average weekly wage? The plaintiff. So then shouldn't the order have been no award because you didn't meet your burden, as opposed to picking out some number based on a calculation that doesn't comport with the act? But that wasn't brought before any appellate. It was not raised by him. But what was raised is the average weekly wage is inaccurate. Because it is alleged that the arbitrator. I'm sorry, I don't mean to speak over you. It's because it was divided by 52. That's why. And it's totally inaccurate. So now the question becomes, shouldn't the commission have to do it the right way? Well, again, arbitrator Black didn't say that he is adopting the number that I advocated based upon it being correctly computed by dividing by 52. So what he said was, J.K.C. doesn't argue that the average weekly wage was at least that much. I'll give him that much. But he never calculated. He was very clear you didn't meet your burden of proof. And whether he should have then said you get nothing. I will read to you the finding of the arbitrator. Yes, sir. In the year preceding the injury, the petitioner earned $28,654, the average weekly wage was $551.04. So don't tell me you didn't compute it. He found it. But he said he didn't meet your burden of proof. And he's going to adopt the number that was advocated by J.K.C. Well, J.K.C. had said $50. And he adopted that. You say that's okay, too? I didn't say that. I'm not advocating anything. I'm just saying that he wrote. Well, who do you represent? I represent J.K.C. Well, who had advocated $551.04? At the hearing. Maybe I was right. Maybe I was wrong. That wasn't my position. Well, he's appealing just saying it's wrong because it's based upon a calculation that doesn't comport with the statute. I guess your first position is correct, that the arbitrator ought not to have given him anything. And he would be here now and he would be arguing he shouldn't have gotten zero. Well, they got zero. They should have computed in accordance with the evidence presented and the law. Well, I understand. I'm just saying that as far as I'm concerned, the record shows no calculation was done. Your Honor has the same record that I have looked at. You can take a look at it. In regard to the second issue about penalties or imposition of attorney's fees, it was our position that, again, it's a manifest way. The claimant never offered any evidence suggesting that the arbitrator did not take into account something presented at the hearings from which he should have awarded penalties or attorney's fees to Mr. Leboeuf. And I, again, make the point that unlike Roberson or Ware, unlike P.I. and I or Superior, Mr. Ware is a putative employer, we had 240 people at that time all covered by workers' compensation. We believed that we had an enforceable contract with Mr. Leboeuf, notwithstanding the Roberson case. And the Roberson case, as Justice Hoffman points out, just was affirming the commission. In Roberson, it goes back and forth. The arbitrator denied benefits to the claimant. In Ware, the arbitrator gave benefits to the claimant. It bounces back and forth. It's hardly any of those cases. Read them all together. It's not dispositive. Okay, counsel. Your time is up. Thank you. Thank you, Your Honor. Thank you, counsel, both, for your arguments in this matter. This morning it was taken under advisement and written disposition shall issue.